PHILIP EPSTEIN *vs.* FELLSWAY MOTORS, INC.

SUFFOLK.     March 2, 1948. — June 14, 1948.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Contract,* For share of profits, Construction.     *Equity Jurisdiction,* Accounting.

Under a contract of employment providing for payment to the employee of a stated percentage of the net profits of the employer's business earned during the period of employment, "payable at the end of each fiscal year, or at the termination of this agreement"; that "any additional Federal taxes . . . assessed or fines or penalties due to violations . . . levied against" the employer respecting the business "during the duration of this agreement" should "be considered as operating costs" and should be "deducted from the net profits" for the year of "such assessment" in computing the amount due the employee; and that upon "completion of the recomputation of the net profits" the employee should "contribute such sums so that in the finality he shall receive only . . . [the stated percentage] of the net profits . . . for that particular fiscal year," the employee, upon rightfully terminating the contract during a fiscal year, became entitled to receive the stated percentage of the net profits for that year up to that time notwithstanding that Federal agents had commenced an examination of the employer's books which might result in additional taxes or penalties: the employer was not entitled to defer payment to the employee of his share of the profits until the employer's liability to the Federal government should be finally determined.

BILL IN EQUITY, filed in the Superior Court on July 11, 1947.

The plaintiff appealed from a final decree dismissing the bill, entered after hearing by *Dillon*, J.

In this court the case was submitted on briefs.

*C. D. Epstein*, for the plaintiff.

*S. Bergson*, for the defendant.

SPALDING, J. The plaintiff, who was formerly employed by the defendant, brought this suit for an accounting. See G. L. (Ter. Ed.) c. 214, § 3 (6). The case comes here on the plaintiff's appeal from a final decree. The judge made voluntary findings of some of the facts. The evidence is reported.

Facts pertinent to this appeal are these. The defendant is a corporation engaged in buying and selling automobiles. On June 11, 1945, the plaintiff entered the employ of the defendant pursuant to a written agreement executed on that date. Under paragraph 6 of the agreement the defendant promised to pay the plaintiff "(a) One hundred ($100) dollars per week, payable weekly and, (b) Payable at the end of each fiscal year, or at the termination of this agreement, 25 per cent of the net profits of Fellsway Motors, Inc. actually earned and collected by Fellsway Motors, Inc. during the period that Philip Epstein shall be employed and render services hereunder. . . . Net profits hereunder shall be determined according to standard methods of accounting prevailing in businesses similar to the business of the Fellsway Motors, Inc., net profits being determined after making allowances for all expenses accrued or paid of whatsoever nature of the corporation, including all taxes or contributions made to governmental agencies or departments, and including Federal and State income and excess profits and taxes if any there be, and any and all other taxes assessed by Federal, State, or city government."

Early in September of 1946 the agreement was amended. All that is material here is paragraph 1 which reads as follows: "The provision of paragraph 6b of said agreement dated June 11, 1945, is altered so that Philip Epstein shall be entitled to receive twenty-five (25%) per cent of the net profits as therein provided for the fiscal year beginning August 1, 1945, and thereafter, except that net profits shall

be determined before making allowances for Federal taxes and not after making allowances therefor. If any additional Federal taxes are assessed or fines or penalties due to violations are levied against the corporation as a result of the activities of the corporation during the duration of this agreement, such shall be considered as operating costs of the corporation and shall be deducted from the net profits made for the year for which such assessment was made, for the purpose of determining the amount due Philip Epstein as his share of the profits under this agreement. Upon the completion of the recomputation of the net profits, Philip Epstein shall contribute such sums so that in the finality he shall receive only twenty-five (25%) per cent of the net profits of the corporation for that particular fiscal year. Such contribution shall not be made in excess of the amount of the twenty-five (25%) per cent previously computed to be due to Philip Epstein."

It is agreed that as of May 31, 1947, "the contract was duly terminated by the plaintiff in accordance with the terms of the contract."[1]  Although the plaintiff had been paid his share of the profits for the fiscal year ending July 31, 1946, the defendant declined to pay him the profits which had been earned since that time, giving as its reason that the amount could not be ascertained until its tax liability to the Federal government had been determined. At about the time the contract was terminated Federal revenue agents had commenced an examination of the defendant's books. That examination had not been completed at the time of the trial. The judge made no finding as to what the plaintiff's share of the profits then was; but if it is to be determined as of the date the contract was terminated there would appear to be no difficulty in computing it.[2]

---

[1] The contract provided that it was to continue in force until either party should notify the other in writing of his intention to terminate it, in which case the contract would terminate as of the date fixed in the notice.

[2] With the exception of a few items, there seems to be no real dispute between the parties as to the profits earned as of May 31, 1947. The plaintiff claims that his share of the profits amounts to $6,481.98. The defendant's accountant testified that this share according to his computation was $5,931.98. The difference arises from certain deductions made by the defendant, which the plaintiff disputes.

The judge ruled in substance that under the contract as amended the defendant was entitled to deduct from the profits earned such additional taxes or penalties as the Federal government might exact, and that since these had not then been determined it was not possible to compute the plaintiff's share of the profits. Ruling that the plaintiff was not entitled to equitable relief and that he should be left to his remedy at law, the judge ordered a decree to be entered dismissing the bill. Evidently the judge took the view that suit was brought prematurely, and that when the plaintiff was entitled to proceed he should do so at law, presumably because the accounting did not appear to be so complicated that it could not conveniently be settled in an action at law.

The plaintiff contends that he was entitled to receive his share of the profits at the termination of the agreement. The defendant's position is that it should not have to pay the plaintiff his share of the profits until its liability to the Federal government for additional taxes and penalties shall have been finally established. We are of opinion that the plaintiff was entitled to receive his share of the net profits at the termination of the agreement and that the decree dismissing the bill was error. The original agreement provides that the plaintiff was to receive twenty-five per cent of the net profits of the business "payable at the end of each fiscal year, or at the termination of this agreement." The amendment kept alive all provisions of the original agreement except such as were "expressly inconsistent herewith." We find nothing in the amendment that is inconsistent with the provision that the profits are to be paid to the plaintiff at termination of the agreement. In substance all that the amendment does is to change the method of computing the net profits. Under the original agreement the profits were to be determined after taxes; by the amendment they were to be determined before taxes. To be sure, the amendment went on to provide that "If any additional Federal taxes are assessed or fines or penalties due to violations are levied against the corporation" as a result of its activities during the life of the agreement, these shall be deducted from the

net profits "for the purpose of determining the amount due Philip Epstein as his share of the profits under this agreement." But the amendment further provides that "Upon the completion of the recomputation of the net profits, Philip Epstein shall *contribute such sums* so that in the finality he shall receive only twenty-five (25%) per cent of the net profits of the corporation for that particular fiscal year" and that "Such *contribution* shall not be made in excess of the amount of the twenty-five (25%) per cent previously computed to be due to Philip Epstein" (emphasis supplied). This means, we think, that the plaintiff was to receive his twenty-five per cent share of the profits, as provided in the original agreement, at its termination, but in the event that additional taxes or penalties were subsequently imposed these were to be deducted from the profits, and the plaintiff was to reimburse the defendant to the extent that under the contract he had been overpaid. A contrary interpretation would give the defendant the right to withhold payments to the plaintiff for an indefinite period, for conceivably it might never be known with any degree of certainty whether or in what amount additional taxes or penalties would be assessed until long after the contract was terminated.[1] A construction of the contract leading to such a result ought not to be made unless plainly required by its language. Such language is not to be found.

The defendant rightly does not contend that the proceedings here are not within the equity jurisdiction of the court (see G. L. [Ter. Ed.] c. 214, § 3 [6];[2] *Hallett* v. *Cumston*, 110 Mass. 32), the case having been tried on the merits without this question having been raised and pressed

---

[1] See, for example, U. S. C. (1940 ed.) Title 26, § 275 (c), which provides that "If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed . . . *at any time within 5 years after the return was filed*" (emphasis supplied).

See also U. S. C. (1940 ed.) Title 26, § 276 (a), which provides: "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, *at any time*" (emphasis supplied).

[2] By G. L. (Ter. Ed.) c. 214, § 3 (6), the Supreme Judicial and Superior Courts are given concurrent jurisdiction in equity in "Suits upon accounts of such a nature that they cannot be conveniently and properly adjusted and settled in an action at law."

by the defendant. See *Whitney* v. *Whitney*, 316 Mass. 367, 371–372, and cases cited.

It follows that the final decree is reversed and the case is remanded to the Superior Court for the determination of the plaintiff's share of the net profits as of May 31, 1947, the date of termination of the contract. The plaintiff is to have costs of this appeal.

*So ordered.*